## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONFORMIS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case Action No. 19-1528-RGA |
| v. | ) |
| | ) |
| ZIMMER BIOMET HOLDINGS, INC. and | ) |
| ZIMMER, INC., | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants. | ) |
| | ) |

### AMENDED COMPLAINT FOR PATENT INFRINGEMENT

For its Amended Complaint against Zimmer Biomet Holdings, Inc. and Zimmer, Inc. (together, "Zimmer Biomet" or "Defendants"), Plaintiff Conformis, Inc. ("Conformis" or "Plaintiff"), by its attorneys, alleges as follows:

### NATURE OF THE ACTION

1.      This is a patent infringement action.

2.      Conformis brings this action to seek damages and other relief arising from the infringement by Zimmer Biomet of (i) U.S. Patent No. 8,377,129 ("the '129 Patent," attached hereto as Exhibit A), entitled "Joint Arthroplasty Devices and Surgical Tools," (ii) U.S. Patent No. 8,460,304 ("the '304 Patent," attached hereto as Exhibit B), entitled "Joint Arthroplasty Devices and Surgical Tools," (iii) U.S. Patent No. 9,186,161 ("the '161 Patent," attached hereto as Exhibit C), entitled "Surgical Tools for Arthroplasty," and (iv) U.S. Patent No. 9,295,482 ("the '482 Patent," attached hereto as Exhibit D), entitled "Patient Selectable Joint Arthroplasty Devices and Surgical Tools" (collectively, "the Patents-In-Suit").

## PARTIES

1.      Plaintiff Conformis, Inc. is a Delaware corporation with its worldwide headquarters at 600 Technology Park Drive, Billerica, Massachusetts 01821.

2.      Conformis is the assignee and owner of the Patents-In-Suit.

3.      Upon information and belief, Defendant Zimmer Biomet Holdings, Inc. is a Delaware corporation with its principal place of business at 345 East Main Street, Warsaw, Indiana 46580.

4.      Upon information and belief, Defendant Zimmer, Inc. is a Delaware corporation with its principal place of business at 345 East Main Street, Warsaw, Indiana 46580.

## JURISDICTION AND VENUE

5.      Conformis' patent infringement claims arise under the Patent Laws of the United States, Title 35, of the United States Code.  Accordingly, this Court has subject matter jurisdiction over such claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (action arising under an Act of Congress relating to patents).

6.      This Court has personal jurisdiction over Defendants, at least because Defendants are at home in the State of Delaware, where they are incorporated and have a registered agent for service of process.  In addition, upon information and belief, Defendants regularly do or solicit business in the State of Delaware and have committed one or more acts of patent infringement complained of herein in the District of Delaware.

7.      Venue in this Court is proper under the provisions of 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400.  Defendants are incorporated in Delaware and thus reside in this State.

2

## FACTUAL BACKGROUND

### A.      Background

8.      Conformis is the world's leading designer, developer, and manufacturer of patient-specific instrument systems required to best fit implants into a specific patient's body. Conformis also designs and manufactures patient-specific knee and hip replacement implant systems.  Founded by doctors affiliated with Stanford and Harvard Medical Schools, Conformis began with a revolutionary idea: make the implant and tools fit the patient rather than forcing the patient to fit the implant and tools.

9.      For decades before Conformis' innovation, surgeons have been implanting medical devices using (and many are still using) standard instrument systems that have not been designed with reference to the anatomy of individual patients.  As a result of this imprecise approach, after surgery, patients commonly suffer loss of movement and function, instability, and lingering pain.

10.      Conformis recognized that the conventional process of joint repair was backwards: rather than fitting the patient to the tools, the tools should be designed and developed specifically for the patient, as this produces a better-seated implant.

11.      Conformis therefore set out to develop patient-specific instrument systems, which precisely place an implant, reduce surgical time and trauma, and create a reproducible surgical technique.  Conformis' patient-specific instrument systems eliminate many of the traditional instruments associated with conventional surgery while concurrently simplifying and improving surgical technique.

B.   **Conformis' Patents**

12.   Conformis has made significant investments in the research, development, and testing of patient-specific instrument systems for joint replacement surgery.

13.   To protect those investments, Conformis applied for and obtained a number of patents, including the Patents-In-Suit.

14.   Patent authorities worldwide have recognized that Conformis' patient-specific instrument systems are worthy of patent protection, and have granted Conformis over 200 patents on its technologies.  These patents, and Conformis' many additional pending patent applications, span a range of related technologies including imaging software, image processing, patient-specific orthopedic implants, patient-specific orthopedic instrumentation, methods of design and manufacture of patient-specific systems, and related surgical techniques.  The technology and patent portfolio are applicable to all major joint systems, including knee, hip, shoulder, and ankle joints.

15.   The '129 Patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on February 19, 2013, to Wolfgang Fitz, Philipp Lang, Daniel Steines, Konstantinos Tsougarakis and Rene Vargas-Voracek, after fair and full examination, for "Joint Arthroplasty Devices and Surgical Tools."  The '129 Patent is assigned to Conformis.

16.   The '304 Patent was duly and legally issued by the USPTO on June 11, 2013, to Wolfgang Fitz, Philipp Lang, Daniel Steines, Konstantinos Tsougarakis and Rene Vargas-Voracek, after full and fair examination, for "Joint Arthroplasty Devices and Surgical Tools."  The '304 Patent is assigned to Conformis.

17.   The '161 Patent was duly and legally issued by the USPTO on November 17, 2015, to Philipp Lang, Wolfgang Fitz, Ray Bojarski, Daniel Steines, Albert G. Burdulis, Jr., and

4

Rene Vargas-Voracek, after fair and full examination, for "Surgical Tools for Arthroplasty." The '161 Patent is assigned to Conformis.

18.     The '482 Patent was duly and legally issued by the USPTO on March 29, 2016, to Wolfgang Fitz, Philipp Lang, Raymond A. Bojarski and Daniel Steines, after fair and full examination, for "Patient Selectable Joint Arthroplasty Devices and Surgical Tools."  The '482 Patent is assigned to Conformis.

19.     Conformis is the owner of all rights, title, and interest in and to the Patents-In-Suit.  Conformis possesses all rights to sue and recover for past and future infringement of the Patents-In-Suit.

## C.     Zimmer Biomet's Infringing Activities

20.     Zimmer Biomet offers lines of patient-specific or personalized surgical instruments that are based on images of the patient's knee for knee replacement surgery, including at least those offered as part of Zimmer Biomet's Signature[TM] Personalized Patient Care Vanguard® Complete Knee System ("Vanguard®"), Persona® The Personalized Knee System ("Persona®"), NexGen® Complete Knee Solution ("NexGen®"), and Gender Solutions® Natural-Knee® Flex System ("Gender Solutions®") (collectively, the "Accused Knee Instruments").

21.     Zimmer Biomet also sells implants as part of those systems to be used with the Accused Knee Instruments, including but not limited to *NexGen*® CR, *NexGen* CR-Flex, *NexGen* CR-Flex Gender, *NexGen* LPS, *NexGen* LPS-Flex, *NexGen* LPS-Flex Gender, *Persona* CR, *Persona* PS, Vanguard Cruciate Retaining Knee, Vanguard Posterior Stabilized Knee and Gender Solutions high-flex femoral implant (collectively, the "Accused Knee Implants").

5

22.     Zimmer Biomet also offers a line of patient-specific or personalized surgical instruments that are based on images of the patient's shoulder for shoulder arthroplasty surgery, including at least those offered as part of the Signature Personalized Patient Care for Comprehensive Total and Reverse Shoulder Systems, including the Signature™ Glenoid system, and the PSI Shoulder for Trabecular Metal Reverse Glenoid (collectively, the "Accused Shoulder Instruments").

23.     As part of that system, Zimmer Biomet also sells implants to be used with the Accused Shoulder Instruments, including but not limited to Trabecular Metal™ Reverse Glenoid Baseplate, Trabecular Metal Reverse Plus System, the Signature Personalized Patient Care for Comprehensive Total and Reverse Shoulder Systems, which includes the Modular Hybrid Glenoid, Bio-Modular Heads and Comprehensive® Vault Reconstruction System (collectively, the "Accused Shoulder Implants").

24.     Zimmer Biomet also offers patient-specific surgical instruments that are based on preoperative patient imaging scans for use during hip replacement surgery, including at least those offered as part of the Signature Personalized Patient Care System - Acetabular Guide System (collectively, the "Accused Hip Instrument").

25.     As part of that system, Zimmer Biomet also sells implants to be used with the Accused Hip Instrument, including but not limited to the triflange acetabular component and the implants identified in Exhibit H attached hereto (collectively, the "Accused Hip Implants").

26.     Zimmer Biomet's patient-specific and personalized instruments compete with Conformis' innovative patient-specific products for joint surgery.

27.     Zimmer Biomet is infringing all of the Patents-in-Suit by making, using, providing, offering to sell, and selling (directly or through intermediaries) the Accused Knee

6

Instruments, in conjunction with the Accused Knee Implants, in this District and elsewhere in the United States.

28.     Zimmer Biomet is infringing at least the '304 Patent and '161 Patent by making, using, providing, offering to sell, and selling (directly or through intermediaries) at least the Accused Shoulder Instruments in conjunction with the Accused Shoulder Implants, in this District and elsewhere in the United States.

29.     Zimmer Biomet is infringing at least the '304 Patent, '161 Patent and '482 Patent by making, using, providing, offering to sell, and selling (directly or through intermediaries) at least the Accused Hip Instrument in conjunction with the Accused Hip Implants, in this District and elsewhere in the United States.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,377,129

30.     Conformis repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

31.     Zimmer Biomet has in the past and is presently making, using, offering for sale, and/or selling a patient-specific system for knee surgery that directly infringes one or more claims of the '129 Patent, literally or under the doctrine of equivalents.

32.     The Accused Knee Instruments, in conjunction with the Accused Knee Implants, practice at least one claim of the '129 Patent.  For example, claim 1 recites:

A patient-specific instrument system for surgery of a diseased or damaged knee joint of a patient, the instrument system comprising:

a patient-specific surface for engaging at least a portion of a substantially uncut joint surface of the diseased or damaged knee joint of the patient,

the patient-specific surface including cartilage information derived from image data of the diseased or damaged knee joint of the patient; and

a guide for directing a surgical instrument,

7

wherein the guide has a predetermined position relative to the patient-specific surface and a predetermined orientation relative to at least one of an anatomical axis and a biomechanical axis associated with said knee joint;

wherein the guide defines a drilling path through at least a portion of the knee joint,

the drilling path having a position based on a predetermined internal rotation angle or external rotation angle of an orthopedic implant.

33.　　As an example of an Accused Knee Instrument, Zimmer Biomet's Persona® system, is marketed as "THE PERSONALIZED KNEE SYSTEM," and is used in conjunction with Accused Knee Implants.  Ex. E at Cover.  Claim 1 of the '129 Patent recites "[a] patient-specific instrument system for surgery of a diseased or damaged knee joint of a patient," comprising "a patient-specific surface for engaging at least a portion of a substantially uncut joint surface of the" knee joint, which includes "cartilage information derived from image data" of the knee joint and also includes "a guide for directing a surgical instrument."  Ex. A at Claim 1.  The Persona® system

is indicated as an orthopedic instrument system to assist in the positioning of knee replacement components.  It involves surgical planning software used pre-operatively to plan the surgical placement of the components on the basis of provided patient radiological images with identifiable placement anatomical landmarks, and surgical instrument components that include patient specific or customized guides fabricated on the basis of the surgical plan to precisely reference the placement of the implant components intra-operatively per the surgical plan.

Ex. F at INTRO.1.  Additionally, the operator is instructed "not [to] remove any . . . cartilage from the femur" or tibia when using the instrument.  *Id.* at 2, 9.

34.　　Claim 1 of the '129 Patent also recites that "the guide has a predetermined position relative to the patient-specific surface and a predetermined orientation relative to . . . an anatomical axis [or] a biomechanical axis associated" with the knee joint and "defines a drilling

path through at least a portion of the knee joint . . . based on a predetermined internal rotation angle or external rotation angle of an orthopedic implant." Ex. A at Claim 1.  The Accused Knee Instruments and Accused Knee Implants involve "[i]nteractive, 3D virtual surgeon planning [that] enhances visualization of patient anatomy and implant position" and the "[v]irtual planning attributes are embodied in patient specific, 3D printed guides."  *See* https://www.zimmerbiomet.com/medical-professionals/knee/product/personalized-guides.html. Upon information and belief, this planning includes setting the positioning of the implant, as well as a rotation, which is set based on the patient's existing anatomical axis or biomechanical axis. The Persona® system, for example, consists of an "optional Tibial Rotational Guide . . . to set the axial rotation of the tibial component."  Ex. F at INTRO.1.  During the surgical procedure, the instrument guides fit on the surface of the femur and tibia so as to ensure the correct positioning and rotation as was planned.  The instrument guides also "have pin holes to allow the surgeon to precisely insert reference pins . . . that set the position of the cut guides."  *Id.*  On information and belief, these pin holes require drilling along a path through the knee joint based on a position and orientation that was planned prior to the surgery.

35.     The other Accused Knee Instruments and Accused Knee Implants infringe the '129 Patent in a similar manner.  Upon information and belief, the different Accused Knee Instruments and Accused Knee Implants function in a manner substantially similar to those in and used with Zimmer Biomet's Persona® system.

36.     Zimmer Biomet's infringing activities violate one or more subsections of 35 U.S.C. § 271.

37.     Zimmer Biomet has also actively induced, and continues to actively induce, others to infringe at least claim 1 of the '129 Patent in violation of 35 U.S.C. § 271(b) by

causing, instructing, urging, encouraging and/or aiding others to directly infringe at least claim 1 of the '129 Patent by making, using, offering to sell, selling, and/or importing in and into the United States the Accused Knee Instruments and Accused Knee Implants, as detailed above. Zimmer Biomet's active inducement has included and/or will include, for example and without limitation, marketing, selling, and offering to sell the Accused Knee Instruments and Accused Knee Implants, providing instructions on how to use the Accused Knee Instruments and Accused Knee Implants, selling instrumentation or devices for use with the Accused Knee Instruments and Accused Knee Implants, and promoting the use of the Accused Knee Instruments and Accused Knee Implants. For example, Zimmer Biomet has encouraged and/or will encourage customers including scientists, researchers, and health care professionals to use the Accused Knee Instruments and Accused Knee Implants by means of marketing materials and videos. Zimmer Biomet also has instructed and/or will instruct customers on how to use the Accused Knee Instruments and Accused Knee Implants by means of product manuals.

38.     Zimmer Biomet has also contributed, and continues to contribute, to its customers' direct infringement of the '129 Patent in violation of 35 U.S.C. § 271(c) by providing the Accused Knee Instruments in conjunction with the Accused Knee Implants, which are not suitable for any substantial non-infringing use. For example, the only use for the accused instruments that have a "patient-specific surface" is as part of a pre-planned knee replacement surgery as detailed above. This use infringes at least claim 1 of the '129 Patent.

39.     Zimmer Biomet became aware of the application leading to the '129 Patent, as well as other Conformis patents in the same family, at least as of March 2011, when Conformis presented Zimmer Biomet with information about its patent portfolio. Upon information and belief, Zimmer Biomet kept track of patents in Conformis's portfolio. Specifically, Zimmer

Biomet knew of the '129 Patent when it cited the patent in an Information Disclosure Statement which was filed with the U.S. Patent and Trademark Office on November 26, 2015, in U.S. patent application No. 14/330,758 (now U.S. Patent No. 9,345,551).  Zimmer Biomet also had notice of the '129 Patent by the filing of the original Complaint.  On information and belief, Zimmer Biomet's direct and indirect infringement of the '129 Patent has been willful.

40.     Thus, upon information and belief, Zimmer Biomet knew about and/or was willfully blind to the '129 Patent since the time it was issued and to the fact that Zimmer Biomet's actions have infringed and will infringe and have induced and contributed and will induce and contribute to infringement of the '129 Patent with the knowledge and intent that one or more claims of the '129 Patent be infringed.  In any event, Zimmer Biomet had this knowledge by the time of the filing of the original complaint in this action.

41.     Conformis has suffered economic harm as a result of Zimmer Biomet's infringing activities in an amount to be proven at trial, but in no case less than a reasonably royalty.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,460,304

42.     Conformis repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

43.     Zimmer Biomet has in the past and is presently making, using, offering for sale, and/or selling patient-specific systems for knee surgery, hip surgery, and shoulder surgery that directly infringe one or more claims of the '304 Patent, literally or under the doctrine of equivalents.  These include the Accused Knee Instruments and Accused Knee Implants, Accused Hip Instrument and Accused Hip Implants, and Accused Shoulder Instruments and Accused Shoulder Implants.

11

44.     Zimmer Biomet's systems practice at least one claim of the '304 Patent.  For example, claim 1 recites:

> A surgical instrument for use in surgically repairing a joint of a patient, the surgical instrument comprising:
>
>> a mold having an internal surface that includes joint information derived from image data of the joint of the patient; and
>>
>> two or more guide holes, each configured to guide a surgical pin,
>>
>>> wherein at least one of the two or more guide holes has a position based on anatomical information of the joint of the patient to facilitate the placement of an articular repair system when the internal surface of the mold is aligned with the joint of the patient,
>>>
>>>> wherein the articular repair system has a predetermined rotation angle and
>>>>
>>>> wherein the position is based on the predetermined rotation angle.

45.     As an example of an Accused Knee Instrument, Zimmer Biomet's Persona® system, is marketed as "THE PERSONALIZED KNEE SYSTEM" and is used in conjunction with Accused Knee Implants.  Ex. E at Cover.  Claim 1 of the '304 Patent requires that the "surgical instrument for use in surgically repairing a joint of a patient . . . has an internal surface that includes joint information derived from image data of the joint of the patient."  Ex. B at Claim 1.  The Persona® system

> is indicated as an orthopedic instrument system to assist in the positioning of knee replacement components.  It involves surgical planning software used pre-operatively to plan the surgical placement of the components on the basis of provided patient radiological images with identifiable placement anatomical landmarks, and surgical instrument components that include patient specific or customized guides fabricated on the basis of the surgical plan to precisely reference the placement of the implant components intra-operatively per the surgical plan.

Ex. F at INTRO.1.

46.     Claim 1 of the '304 Patent also recites that the claimed instrument has "two or more guide holes, each configured to guide a surgical pin" and they have "a position based on anatomical information of the joint of the patient to facilitate the placement of an articular repair system when the internal surface of the mold is aligned with the joint of the patient." Ex. B at Claim 1. During a surgical procedure using the Persona® system, the instrument guides of the Accused Knee Instruments are placed on the ends of the femur and tibia "and have pin holes to allow the surgeon to precisely insert reference pins . . . that set the position of the cut guides." Ex. F at INTRO.1. The location of the pin holes is based on the particular characteristics of a patient's joint. By using the pins based on the Accused Knee Instruments, the proper placement of the Accused Knee Implant based on the preoperative plan is assured.

47.     Lastly, claim 1 of the '304 Patent recites that the "articular repair system has a predetermined rotation angle and . . . the position is based on the predetermined rotation angle." Ex. B at Claim 1. The Accused Knee Instruments and Accused Knee Implants involve "[i]nteractive, 3D virtual surgeon planning [that] enhances visualization of patient anatomy and implant position" and the "[v]irtual planning attributes are embodied in patient specific, 3D printed guides." *See* https://www.zimmerbiomet.com/medical-professionals/knee/product/personalized-guides.html. Upon information and belief, this planning includes aligning the pin holes of the Accused Knee Instrument guide based on the desired positioning and rotation of the implant. During surgery, the Persona® system uses an "optional Tibial Rotational Guide . . . to set the axial rotation of the tibial component." Ex. F at INTRO.1.

48.     The other Accused Knee Instruments and Accused Knee Implants infringe the '304 Patent in a similar manner. Upon information and belief, the different Accused Knee

Instruments and Accused Knee Implants function in a manner substantially similar to those in and used with Zimmer Biomet's Persona® system.

49.     The Accused Shoulder Instruments and Accused Shoulder Implants also infringe the '304 Patent.  As an example, Zimmer Biomet's Signature<sup>TM</sup> Glenoid System is discussed in detail below.

50.     As stated above, claim 1 of the '304 Patent recites "[a] surgical instrument for use in surgically repairing a joint of a patient" and the Accused Shoulder Instrument of the Signature<sup>TM</sup> Glenoid System is a "patient-specific surgical positioning guide which offers a unique and tailored approach to shoulder arthroplasty" which "us[es] three dimensional CT imaging technology" such that the "guides are created and based upon each patients' unique anatomy."  Ex. G at 3.  Claim 1 of the '304 Patent requires the instrument to have "a mold having an internal surface that includes joint information derived from image data of the joint of the patient."  Ex. B at Claim 1.  The Accused Shoulder Instrument of the Signature<sup>TM</sup> Glenoid System is a "patient-specific surgical positioning guide" designed by using "three dimensional CT imaging."  Ex. G at 3.

51.     Additionally, the Accused Shoulder Instrument of the Signature<sup>TM</sup> Glenoid System has "two or more guide holes, each configured to guide a surgical pin," as demonstrated in the images below.  Ex. B at Claim 1.

14

Instruments and Accused Knee Implants function in a manner substantially similar to those in and used with Zimmer Biomet's Persona® system.

49.     The Accused Shoulder Instruments and Accused Shoulder Implants also infringe the '304 Patent.  As an example, Zimmer Biomet's Signature™ Glenoid System is discussed in detail below.

50.     As stated above, claim 1 of the '304 Patent recites "[a] surgical instrument for use in surgically repairing a joint of a patient" and the Accused Shoulder Instrument of the Signature™ Glenoid System is a "patient-specific surgical positioning guide which offers a unique and tailored approach to shoulder arthroplasty" which "us[es] three dimensional CT imaging technology" such that the "guides are created and based upon each patients' unique anatomy."  Ex. G at 3.  Claim 1 of the '304 Patent requires the instrument to have "a mold having an internal surface that includes joint information derived from image data of the joint of the patient."  Ex. B at Claim 1.  The Accused Shoulder Instrument of the Signature™ Glenoid System is a "patient-specific surgical positioning guide" designed by using "three dimensional CT imaging."  Ex. G at 3.

51.     Additionally, the Accused Shoulder Instrument of the Signature™ Glenoid System has "two or more guide holes, each configured to guide a surgical pin," as demonstrated in the images below.  Ex. B at Claim 1.

14



Ex. G at 3.



https://www.zimmerbiomet.com/medical-professionals/shoulder/product/signature-glenoid-technology.html.

52.     Claim 1 of the '304 Patent also requires that "at least one of the two or more guide holes has a position based on anatomical information of the joint of the patient to facilitate the placement of an articular repair system when the internal surface of the mold is aligned with the joint of the patient."  Ex. B at Claim 1.  The Accused Shoulder Instruments of the Signature™ Glenoid System involves "guides [that] are created and based upon each patients'

unique anatomy, offering personalized patient care" and development of "a bone model created from each patients' unique anatomy." Ex. G at 3. When seated on the shoulder, use of the guides allows for precise placement of the Accused Shoulder Implant based on the preoperative plan.

53.     Lastly, the "articular repair system has a predetermined rotation angle and . . . the position is based on the predetermined rotation angle." The interactive preoperative planning performed in connection with the Signature™ Glenoid System "details the suggested position, orientation and size of each implant," which includes its rotation. Ex. G at 4. Upon information and belief, the guide holes of the Accused Shoulder Instrument are positioned based on and take into account the rotation angle of the Accused Shoulder Implant.

54.     The other Accused Shoulder Instruments and Accused Shoulder Implants infringe the '304 Patent in a similar manner. Upon information and belief, the different Accused Shoulder Instruments and Accused Shoulder Implants function in a manner substantially similar to those in Zimmer Biomet's Signature™ Glenoid System.

55.     The Accused Hip Instrument and Accused Hip Implants similarly infringe claim 1 of the '304 Patent. Claim 1 of the '304 Patent recites "[a] surgical instrument for use in surgically repairing a joint of a patient" and the Accused Hip Instrument is a "patient-specific instrument[] used to assist with acetabular cup positioning during hip replacement surgery." Ex. H at 1. Claim 1 of the '304 Patent requires the instrument to have "a mold having an internal surface that includes joint information derived from image data of the joint of the patient." Ex. B at Claim 1. The Accused Hip Instrument relies on "anatomical landmarks of the pelvis that are clearly identifiable on preoperative imaging screens." Ex. H at 1.

56.    Additionally, the Accused Hip Instrument, has "two or more guide holes, each configured to guide a surgical pin" (Ex. B at Claim 1), as shown below.  Ex. I at 3.



Additionally, "at least one of the two or more guide holes has a position based on anatomical information of the joint of the patient to facilitate the placement of an articular repair system when the internal surface of the mold is aligned with the joint of the patient."  Ex. B at Claim 1. According to the product brochure, "[p]ins are placed using the patient-specific guides to register the preoperative plan to the patient" and the instrument system "allows the surgeon to accurately position cup placement," *i.e.* the Accused Hip Implant, "based on the patient's unique anatomy." Ex. I at 3, 5.

57.    Lastly, claim 1 of the '304 Patent requires that "the articular repair system has a predetermined rotation angle and wherein the position is based on the predetermined rotation angle."  Ex. B at Claim 1.  The brochure for the Accused Hip Implants states that the preoperative planning "provides a multitude of preoperative visualization options to fine-tune

implant size and position," including rotation, "and generate Signature^TM positioning guides." Ex. I at 4.  Upon information and belief, the position of the pin holes of the Accused Hip Instrument is determined based on the rotation angle of the Accused Hip Implants.

58.    Zimmer Biomet's infringing activities violate one or more subsections of 35 U.S.C. § 271.

59.    Zimmer Biomet has also actively induced, and continues to actively induce, others to infringe at least claim 1 of the '304 Patent in violation of 35 U.S.C. § 271(b) by causing, instructing, urging, encouraging and/or aiding others to directly infringe at least claim 1 of the '304 Patent by making, using, offering to sell, selling, and/or importing in and into the United States the infringing Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants, as detailed above.  Zimmer Biomet's active inducement has included and/or will include, for example and without limitation, marketing, selling, and offering to sell the Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants, providing instructions on how to use the Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants, selling instrumentation or devices for use with the Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants, and promoting the use of the Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants.  For example, Zimmer Biomet has encouraged and/or will encourage customers including scientists, researchers, and

health care professionals to use the Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants by means of marketing materials and videos.  Zimmer Biomet also has instructed and/or will instruct customers on how to use the Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants by means of product manuals.

60.     Zimmer Biomet has also contributed, and continues to contribute, to its customers' direct infringement of the '304 Patent in violation of 35 U.S.C. § 271(c) by providing the Accused Knee Instruments, Accused Shoulder Instruments, and Accused Hip Instrument in conjunction with, respectively, the Accused Knee Implants, Accused Shoulder Implants, and Accused Hip Implants, which are not suitable for any substantial non-infringing use.  For example, the only use for the accused instruments that have a surface that includes patient-specific joint information is as part of a pre-planned knee, shoulder, or hip replacement surgery as detailed above.  This use infringes at least claim 1 of the '304 Patent.

61.     Zimmer Biomet became aware of the application leading to the '129 Patent, as well as other Conformis patents in the same family, at least as of March 2011, when Conformis presented Zimmer Biomet with information about its patent portfolio.  Upon information and belief, Zimmer Biomet kept track of patents in Conformis's portfolio.  Specifically, Zimmer Biomet knew of the '304 Patent because it cited the patent in an Information Disclosure Statement which was filed with the U.S. Patent and Trademark Office on November 26, 2015, in U.S. patent application No. 14/330,758 (now U.S. Patent No. 9,345,551).  Zimmer Biomet also had notice of the '304 Patent by the filing of the original Complaint.  On information and belief, Zimmer Biomet's direct and indirect infringement of the '304 Patent has been willful.

19

62.     Thus, upon information and belief, Zimmer Biomet knew about and/or was willfully blind to the '304 Patent since the time it was issued and to the fact that Zimmer Biomet's actions have infringed and will infringe and have induced and contributed and will induce and contribute to infringement of the '304 Patent with the knowledge and intent that one or more claims of the '304 Patent be infringed. In any event, Zimmer Biomet had this knowledge by the time of the filing of the original complaint in this action.

63.     Conformis has suffered economic harm as a result of Zimmer Biomet's infringing activities in an amount to be proven at trial, but in no case less than a reasonably royalty.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,186,161

64.     Conformis repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

65.     Zimmer Biomet has in the past and is presently making, using, offering for sale, and/or selling patient-specific systems for knee surgery, hip surgery, and shoulder surgery that directly infringes one or more claims of the '161 Patent, literally or under the doctrine of equivalents. These include the Accused Knee Instruments and Accused Knee Implants, Accused Hip Instrument and Accused Hip Implants, and Accused Shoulder Instruments and Accused Shoulder Implants.

66.     Zimmer Biomet's systems practice at least one claim of the '161 Patent. For example, claim 1 recites:

A surgical system including an articular repair system and a surgical instrument for use in surgically repairing a joint of a patient, the surgical instrument comprising:

a mold having an internal surface that includes joint information derived from image data of the joint of the patient;

and two or more guide holes, each configured to guide a surgical pin,

20

wherein at least one of the two or more guide holes has a position and/or orientation based on anatomical information of the joint of the patient to facilitate the placement of the articular repair system when the internal surface of the mold is aligned with the joint of the patient,

wherein the articular repair system has a predetermined rotation angle and wherein the position and/or orientation is based on the predetermined rotation angle.

67.     As an example of an Accused Knee Instrument, Zimmer Biomet's Persona® system, is marketed as "THE PERSONALIZED KNEE SYSTEM" and is used in conjunction with Accused Knee Implants.  Ex. E at Cover.  Claim 1 of the '161 Patent recites a "surgical system including an articular repair system and a surgical instrument for use in surgically repairing a joint of a patient" that comprises "a mold having an internal surface that includes joint information derived from image data of the joint of the patient."  Ex. C at Claim 1.  The Persona® system

is indicated as an orthopedic instrument system to assist in the positioning of knee replacement components.  It involves surgical planning software used pre-operatively to plan the surgical placement of the components on the basis of provided patient radiological images with identifiable placement anatomical landmarks, and surgical instrument components that include patient specific or customized guides fabricated on the basis of the surgical plan to precisely reference the placement of the implant components intra-operatively per the surgical plan.

Ex. F at INTRO.1.  The Persona® system is used in conjunction with the Accused Knee Implants.

68.     Claim 1 of the '161 Patent also requires that the claimed instrument have "two or more guide holes, each configured to guide a surgical pin" and "ha[ve] a position and/or orientation based on anatomical information of the" patient's joint "to facilitate the placement of the articular repair system when the internal surface of the mold is aligned with the" patient's joint.  Ex. C at Claim 1.  During the surgical procedure, the Accused Knee Instrument guides are placed on the femur and tibia "and have pin holes to allow the surgeon to precisely insert

21

reference pins . . . that set the position of the cut guides." Ex. F at INTRO.1. The location of the guide holes is based on the particular characteristics of a patient's joint. By using the pins inserted through the guide holes of the Accused Knee Instruments, the proper placement of the Accused Knee Implant based on the preoperative plan is assured.

69.     Lastly, claim 1 of the '161 Patent requires that the "articular repair system" has "a predetermined rotation angle" and further that the "the position and/or orientation is based on the predetermined rotation angle." Ex. C at Claim 1. The Accused Knee Instruments and Accused Knee Implants involve "[i]nteractive, 3D virtual surgeon planning [that] enhances visualization of patient anatomy and implant position" and the "[v]irtual planning attributes are embodied in patient specific, 3D printed guides." *See* https://www.zimmerbiomet.com/medical-professionals/knee/product/personalized-guides.html. Upon information and belief, this planning includes aligning the guide holes of the Accused Knee Instrument guide based on the desired positioning and rotation angle of the implant determined preoperatively. During surgery, the Persona® system uses an "optional Tibial Rotational Guide . . . to set the axial rotation of the tibial component." Ex. F at INTRO.1.

70.     The other Accused Knee Instruments and Accused Knee Implants infringe the '161 Patent in a similar manner. Upon information and belief, the different Accused Knee Instruments and Accused Knee Implants function in a manner substantially similar to those in and used with Zimmer Biomet's Persona® system.

71.     The Accused Shoulder Instruments and Accused Shoulder Implants also infringe the '161 Patent. As an example, Zimmer Biomet's Signature™ Glenoid System is discussed in detail below.

22

72.     As stated above, claim 1 of the '161 Patent recites "[a] surgical system including an articular repair system and a surgical instrument for use in surgically repairing a joint of a patient."  Ex. C at Claim 1.  The Accused Shoulder Instruments of the Signature™ Glenoid System, as used with the Accused Shoulder Implants, comprise a "patient-specific surgical positioning guide which offers a unique and tailored approach to shoulder arthroplasty" based on the Accused Shoulder Implants, and which "us[es] three dimensional CT imaging technology" such that the "guides are created and based upon each patients' unique anatomy."  Ex. G at 3.  Claim 1 of the '161 Patent requires the instrument to have "a mold having an internal surface that includes joint information derived from image data of the joint of the patient."  Ex. C at Claim 1.  The Accused Shoulder Instrument of the Signature™ Glenoid System is a "patient-specific surgical positioning guide" designed by using "three dimensional CT imaging."  Ex. G at 3.

73.     Additionally, the Accused Shoulder Instrument of the Signature™ Glenoid System has "two or more guide holes, each configured to guide a surgical pin," as demonstrated in the image below.  Ex. C at Claim 1.



Ex. G at 3.



https://www.zimmerbiomet.com/medical-professionals/shoulder/product/signature-glenoid-technology.html.  Claim 1 of the '161 Patent also requires that "at least one of the two or more guide holes has a position and/or orientation based on anatomical information of the joint of the patient to facilitate the placement of an articular repair system when the internal surface of the mold is aligned with the joint of the patient."  Ex. C at Claim 1.  The Accused Shoulder Instruments of the Signature™ Glenoid System includes "guides [that] are created and based upon each patients' unique anatomy, offering personalized patient care" and development of "a bone model created from each patients' unique anatomy."  Ex. G at 2-3.  The location of the guide holes is based on the particular characteristics of a patient's joint.  By using the pins inserted through the guide holes of the Accused Shoulder Instruments, the proper placement of the Accused Shoulder Implant based on the preoperative plan is assured.

74.     Lastly, claim 1 of the '161 Patent requires that the "articular repair system has a predetermined rotation angle and . . . the position and/or orientation is based on the predetermined rotation angle."  Ex. C at Claim 1.  The interactive preoperative planning performed in connection with the Signature™ Glenoid System "details the suggested position,

orientation and size of each implant." Ex. G at 4.  Upon information and belief, this planning includes aligning the guide holes of the Accused Shoulder Instrument based on the desired positioning and rotation angle of the implant determined preoperatively.

75.     The other Accused Shoulder Instruments and Accused Shoulder Implants infringe the '161 Patent in a similar manner.  Upon information and belief, the different Accused Shoulder Instruments and Accused Shoulder Implants function in a manner substantially similar to those in Zimmer Biomet's Signature$^{TM}$ Glenoid System.

76.     The Accused Hip Instrument and Accused Hip Implants similarly infringe claim 1 of the '161 Patent.  Claim 1 of the '161 Patent recites "[a] surgical system including an articular repair system and a surgical instrument for use in surgically repairing a joint of a patient."  Ex. C at Claim 1.  The Accused Hip Instrument used in conjunction with the Accused Hip Implants is a "surgical system including an articular repair system and a "patient-specific instrument[] used to assist with acetabular cup positioning during hip replacement surgery."  Ex. H at 1.  Claim 1 of the '161 Patent requires the instrument to have "a mold having an internal surface that includes joint information derived from image data of the joint of the patient."  Ex. C at Claim 1.  The Accused Hip Instrument relies on "anatomical landmarks of the pelvis that are clearly identifiable on preoperative imaging screens."  Ex. H at 1.

77.     Additionally, the Accused Hip Instrument, has "two or more guide holes, each configured to guide a surgical pin" (Ex. C at Claim 1), as shown below.  Ex. I at 5.



Additionally, "at least one of the two or more guide holes has a position based on anatomical information of the joint of the patient to facilitate the placement of an articular repair system when the internal surface of the mold is aligned with the joint of the patient."  Ex. C at Claim 1. According to the brochure, "[p]ins are placed using the patient-specific guides to register the preoperative plan to the patient" and the instrument system "allows the surgeon to accurately position cup placement based on the patient's unique anatomy."  Ex. I at 3, 5.  The location of the guide holes is based on the particular characteristics of a patient's joint.  By using the pins inserted through the guide holes of the Accused Hip Instrument, the proper placement of the Accused Hip Implants based on the preoperative plan is assured.

78.    Lastly, claim 1 of the '161 Patent requires that "the articular repair system has a predetermined rotation angle and wherein the position is based on the predetermined rotation angle."  Ex. C at Claim 1.  The brochure states that the preoperative planning "provides a multitude of preoperative visualization options to fine-tune implant size and position and

generate Signature$^{TM}$ positioning guides." Ex. I at 4.  Upon information and belief, this planning includes aligning the guide holes of the Accused Hip Instrument based on the desired positioning and rotation angle of the implant determined preoperatively.

79.     Zimmer Biomet's infringing activities violate one or more subsections of 35 U.S.C. § 271.

80.     Zimmer Biomet has also actively induced, and continues to actively induce, others to infringe at least claim 1 of the '161 Patent in violation of 35 U.S.C. § 271(b) by causing, instructing, urging, encouraging and/or aiding others to directly infringe at least claim 1 of the '161 Patent by making, using, offering to sell, selling, and/or importing in and into the United States the infringing Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants, as detailed above.  Zimmer Biomet's active inducement has included and/or will include, for example and without limitation, marketing, selling, and offering to sell the Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants, providing instructions on how to use the Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants, selling instrumentation or devices for use with the Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants, and promoting the use of the Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants.  For example, Zimmer Biomet has encouraged and/or will encourage customers including scientists, researchers, and

health care professionals to use the Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants by means of marketing materials and videos.  Zimmer Biomet also has instructed and/or will instruct customers on how to use the Accused Knee Instruments and Accused Knee Implants, Accused Shoulder Instruments and Accused Shoulder Implants, and Accused Hip Instrument and Accused Hip Implants by means of product manuals.

81.     Zimmer Biomet has also contributed, and continues to contribute, to its customers' direct infringement of the '161 Patent in violation of 35 U.S.C. § 271(c) by providing the Accused Knee Instruments, Accused Shoulder Instruments, and Accused Hip Instrument in conjunction with, respectively, the Accused Knee Implants, Accused Shoulder Implants, and Accused Hip Implants, which are not suitable for any substantial non-infringing use.  For example, the only use for the accused instruments that have a surface that includes patient-specific joint information is as part of a pre-planned knee, shoulder, or hip replacement surgery as detailed above.  This use infringes at least claim 1 of the '161 Patent.

82.     Zimmer Biomet became aware of Conformis patents in the same family as the '161 Patent at least as of March 2011, when Conformis presented Zimmer Biomet with information about its patent portfolio.  Upon information and belief, Zimmer Biomet kept track of patents in Conformis's portfolio.  Specifically, Zimmer Biomet knew of the '161 Patent because it cited a priority application U.S. Application Number 12/048,764, in an Information Disclosure Statement which was filed with the U.S. Patent and Trademark Office on November 26, 2015, in U.S. patent application No. 14/330,758 (now U.S. Patent No. 9,345,551 B2).  Zimmer Biomet also had notice of the '161 Patent by the filing of the original Complaint.  On

information and belief, Zimmer Biomet's direct and indirect infringement of the '161 Patent has been willful.

83.     Thus, upon information and belief, Zimmer Biomet knew about and/or was willfully blind to the '161 Patent since the time it was issued and to the fact that Zimmer Biomet's actions have infringed and will infringe and have induced and contributed and will induce and contribute to infringement of the '161 Patent with the knowledge and intent that one or more claims of the '161 Patent be infringed.  In any event, Zimmer Biomet had this knowledge by the time of the filing of the original complaint in this action.

84.     Conformis has suffered economic harm as a result of Zimmer Biomet's infringing activities in an amount to be proven at trial, but in no case less than a reasonably royalty.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,295,482

85.     Conformis repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

86.     Zimmer Biomet has in the past and is presently making, using, offering for sale, and/or selling patient-specific systems for knee surgery and hip surgery that directly infringe one or more claims of the '482 Patent, literally or under the doctrine of equivalents.  These include the Accused Knee Instruments and Accused Knee Implants and Accused Hip Instrument and Accused Hip Implants.

87.     Zimmer Biomet's systems practice at least one claim of the '482 Patent.  For example, claim 1 recites:

A joint arthroplasty system for repairing a diseased or damaged joint of a patient comprising:

an implant; and

a patient-specific surgical instrument configured to facilitate the placement of the implant into the diseased or damaged joint, the instrument comprising:

a patient-specific surface for engaging a corresponding portion of the diseased or damaged joint,

the patient-specific surface including cartilage information derived from image data of the diseased or damaged joint,

wherein the corresponding portion of the diseased or damaged joint includes an osteophyte,

wherein the patient-specific surface references the osteophyte when the patient-specific surface is engaged and aligned with the corresponding portion of the diseased or damaged joint; and

a guide sized and shaped to accommodate a surgical tool, wherein the guide has a position and orientation relative to the patient-specific surface to provide a predetermined path for the surgical tool.

88.     As an example of an Accused Knee Instrument, Zimmer Biomet's Persona®

system, is marketed as "THE PERSONALIZED KNEE SYSTEM" and is used in conjunction

with Accused Knee Implants.  Ex. E at Cover.  Claim 1 of the '482 Patent recites "[a] joint

arthroplasty system for repairing a diseased or damaged joint" comprising "an implant" and "a

patient-specific surgical instrument . . . to facilitate the placement of the implant" and "engage a

corresponding portion" of the joint.  Ex. D at Claim 1.  The Persona® system

is indicated as an orthopedic instrument system to assist in the positioning of knee replacement components.   It involves surgical planning software used pre-operatively to plan the surgical placement of the components on the basis of provided patient radiological images with identifiable placement anatomical landmarks, and surgical instrument components that include patient specific or customized guides fabricated on the basis of the surgical plan to precisely reference the placement of the implant components intra-operatively per the surgical plan.

Ex. F at INTRO.1.  The Persona® system is used in conjunction with Accused Knee Implants.

89.     In addition, claim 1 of the '482 Patent recites that the "patient-specific surface" of the Accused Knee Instrument includes "cartilage information derived from image data" and that the portion of the joint "includes [and references] an osteophyte." Ex. D at Claim 1.  The operator of the Persona® system is instructed "not [to] remove osteophytes or cartilage from the femur" or tibia when using the instrument.  Ex. F at 2, 9.  On information and belief, the patient-specific surface of the Accused Knee Instruments therefore is designed based on osteophytes and references the osteophytes when positioned or placed on the corresponding portion of the patient's joint.  *See* Ex. F at INTRO.1.

90.     Lastly, claim 1 of the '482 Patent recites that the guide is "sized and shaped to accommodate a surgical tool, wherein the guide has a position and orientation relative to the patient-specific surface to provide a predetermined path for the surgical tool."  Ex. D at Claim 1.  During the surgical procedure, the Accused Knee Instruments are placed on the femur and tibia "and have pin holes to allow the surgeon to precisely insert reference pins . . . that set the position of the cut guides."  *Id.*  The location of the pin holes is based on the particular characteristics of a patient's joint, and this is located in a position and orientation relative to the patient-specific surface of the tool so as to allow successful surgery.  The technique guide instructs the operator that a 3.2mm drill bit and pin/screw are used during the procedure.  *Id.* at 4-5.  As depicted in the image below, the Persona® system guide provides a "predetermined path for the surgical tool."  Ex. D at Claim 1; Ex. F at 4.



Fig. 4

91.     The other Accused Knee Instruments and Accused Knee Implants infringe the '482 Patent in a similar manner.  Upon information and belief, the different Accused Knee Instruments and Accused Knee Implants function in a manner substantially similar to those in and used with Zimmer Biomet's Persona® system.

92.     The Accused Hip Instrument and Accused Hip Implants also infringe the '482 Patent.  Claim 1 of the '482 Patent recites "[a] joint arthroplasty system for repairing a diseased or damaged joint of a patient.  Ex. D at Claim 1.  The hip products use a "patient-specific instrument[] used to assist with acetabular cup positioning during hip replacement surgery."  Ex. H at 1.  As recited in claim 1 of the '482 Patent, the Accused Hip Instrument used in conjunction with the Accused Hip Implants comprises an "implant" and "a patient-specific surgical instrument configured to facilitate the placement of the implant into the diseased or damaged joint."  Ex. D at Claim 1.

93.     Claim 1 of the '482 Patent requires that the instrument includes "a patient-specific surface for engaging a corresponding portion of the diseased or damaged joint."  *Id.*  The

Accused Hip Instrument is placed on the patient's diseased or damaged joint.  "Pins are placed using the patient-specific guides [of the Accused Hip Instrument] to register the preoperative plan to the patient."  Ex. I at 5.  Claim 1 of the '482 Patent further requires that the "patient-specific surface include[es] cartilage information derived from image data" of the patient's joint.  Ex. D at Claim 1.  The Accused Hip Instrument uses MRI imaging to prepare the patient-specific surfaces.  Ex. I at 4.  On information and belief, the MRI imaging provides cartilage information about the patient's joint.  Indeed, the Accused Hip Instrument guides are "designed to reference off of . .. cartilage."  Ex. J at 3.

94.     As required by claim 1 of the '482 Patent, as noted above, the Accused Hip Instrument guides are "designed to reference off of bone and cartilage.  Therefore, do not remove the osteophytes in the areas where the guides will be placed."  Ex. J at 3.  During surgery, the guide is placed on the patient's diseased or damaged joint.  Accordingly, the patient-specific surface of the Accused Hip Instrument "references the osteophyte when the patient-specific surface is engaged and aligned with the corresponding portion of the diseased or damaged joint," as required by the claim.  Ex. D at Claim 1.

95.     Lastly, claim 1 requires that the instrument include "a guide sized and shaped to accommodate a surgical tool, wherein the guide has a position and orientation relative to the patient-specific surface to provide a predetermined path for the surgical tool."  Ex. D at Claim 1.  The hip surgical technique brochure instructs insertion of "a surgical tool," *i.e.*, drill pins, (*id.*) "through the drill sleeve and two guide holes."  Ex. J at 4.  The location of the guide holes is based on the particular characteristics of a patient's joint, and this is located in a position and orientation relative to the patient-specific surface of the tool so as to allow for successful surgery.

33

96.     Zimmer Biomet's infringing activities violate one or more subsections of 35 U.S.C. § 271.

97.     Zimmer Biomet has also actively induced, and continues to actively induce, others to infringe at least claim 1 of the '482 Patent in violation of 35 U.S.C. § 271(b) by causing, instructing, urging, encouraging and/or aiding others to directly infringe at least claim 1 of the '482 Patent by making, using, offering to sell, selling, and/or importing in and into the United States the infringing Accused Knee Instruments and Accused Knee Implants and Accused Hip Instrument and Accused Hip Implants, as detailed above.  Zimmer Biomet's active inducement has included and/or will include, for example and without limitation, marketing, selling, and offering to sell the Accused Knee Instruments and Accused Knee Implants and Accused Hip Instrument and Accused Hip Implants, providing instructions on how to use the Accused Knee Instruments and Accused Knee Implants and Accused Hip Instrument and Accused Hip Implants, selling instrumentation or devices for use with the Accused Knee Instruments and Accused Knee Implants and Accused Hip Instrument and Accused Hip Implants, and promoting the use of the Accused Knee Instruments and Accused Knee Implants and Accused Hip Instrument and Accused Hip Implants.  For example, Zimmer Biomet has encouraged and/or will encourage customers including scientists, researchers, and health care professionals to use the Accused Knee Instruments and Accused Knee Implants and Accused Hip Instrument and Accused Hip Implants by means of marketing materials and videos.  Zimmer Biomet also has instructed and/or will instruct customers on how to use the Accused Knee Instruments and Accused Knee Implants and Accused Hip Instrument and Accused Hip Implants by means of product manuals.

98.     Zimmer Biomet has also contributed, and continues to contribute, to its customers' direct infringement of the '482 Patent in violation of 35 U.S.C. § 271(c) by providing the Accused Knee Instruments and Accused Hip Instrument in conjunction with, respectively, the Accused Knee Implants and Accused Hip Implants, which are not suitable for any substantial non-infringing use.  For example, the only use for the accused instruments that have a surface that includes patient-specific joint information is as part of a pre-planned knee or hip replacement surgery as detailed above.  This use infringes at least claim 1 of the '482 Patent.

99.     Zimmer Biomet became aware of Conformis patents in the same family as the '482 Patent at least as of March 2011, when Conformis presented Zimmer Biomet with information about its patent portfolio.   Upon information and belief, Zimmer Biomet kept track of patents in Conformis's portfolio.  Specifically, Zimmer Biomet knew of the '482 Patent because it cited a priority application, U.S. Application Number 12/048,764, in an Information Disclosure Statement which was filed with the U.S. Patent and Trademark Office on November 26, 2015, in U.S. patent application No. 14/330,758 (now U.S. Patent No. 9,345,551 B2). Zimmer Biomet also had notice of the '482 Patent by the filing of the original Complaint.  On information and belief, Zimmer Biomet's direct and indirect infringement of the '482 Patent has been willful.

100.    Thus, upon information and belief, Zimmer Biomet knew about and/or was willfully blind to the '482 Patent since the time it was issued and to the fact that Zimmer Biomet's actions have infringed and will infringe and have induced and contributed and will induce and contribute to infringement of the '482 Patent with the knowledge and intent that one or more claims of the '482 Patent be infringed.  In any event, Zimmer Biomet had this knowledge by the time of the filing of the original complaint in this action.

101.    Conformis has suffered economic harm as a result of Zimmer Biomet's infringing activities in an amount to be proven at trial, but in no case less than a reasonably royalty.

## PRAYER FOR RELIEF

**WHEREFORE**, Conformis respectfully requests the following relief:

A.      The entry of a judgment in favor of Conformis, and against Zimmer Biomet, that Zimmer Biomet has directly infringed and induced and contributed to infringement of one or more claims of the '129 Patent, the '304 Patent, the '161 Patent, and the '482 Patent;

B.      The entry of a judgment in favor of Conformis, and against Zimmer Biomet, that Zimmer Biomet has willfully infringed one or more claims of the '129 Patent, the '304 Patent, the '161 Patent, and the '482 Patent;

C.      The entry of a judgment awarding Conformis all damages resulting from Zimmer Biomet's infringement, including Conformis' lost profits and no less than a reasonable royalty, and that such amount be trebled based on Zimmer Biomet's willful infringement;

D.      The entry of a judgment declaring that this is an exceptional case and awarding Conformis its attorneys' fees in this matter pursuant to 35 U.S.C. § 285;

E.      The entry of a judgment in favor of Conformis, and against Zimmer Biomet, that interest, costs, and expenses be awarded in favor of Conformis; and

F.      That this Court order such other relief as the Court may deem just and proper, including injunctive relief.

## JURY DEMAND

Conformis hereby demands trial by jury in this action on all issues so triable.

Dated:  February 3, 2020

**OF COUNSEL:**

Matthew M. Wolf
Paul Margulies
Michael Gershoni
Victoria L. Reines*
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 942-5000
Matthew.Wolf@arnoldporter.com
Paul.Margulies@arnoldporter.com
Michael.Gershoni@arnoldporter.com
Victoria.Reines@arnoldporter.com

\* Admitted only in New York; practicing
law in the District of Columbia during the
pendency of her application for admission to
the D.C. Bar and under the supervision of
lawyers of the firm who are members in
good standing of the D.C. Bar.

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Robert M. Vrana*
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600

*Attorneys for Comformis, Inc.*

37