**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CONFORMIS, INC., <br>      Plaintiff, <br>    v. <br> ZIMMER BIOMET HOLDINGS, INC. and ZIMMER, INC., <br>      Defendants. | C. A. No. 19-1528-RGA (CONSOL.) |
| CONFORMIS, INC., <br>      Plaintiff, <br>    v. <br> MEDACTA USA, INC. and MEDACTA INTERNATIONAL SA, <br>      Defendants. | C. A. No. 19-1618-RGA <br><br> **JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

For its Second Amended Complaint against Medacta USA, Inc. ("Medacta USA") and Medacta International SA ("Medacta International")  (collectively "Medacta" or "Defendants"), Plaintiff Conformis, Inc. ("Conformis" or "Plaintiff"), by its attorneys, alleges as follows:

## NATURE OF THE ACTION

1.   This is a patent infringement action.

2.   Conformis brings this action to seek damages and other relief arising from the infringement by Medacta of (i) U.S. Patent No. 8,377,129 ("the '129 Patent," attached hereto as Exhibit A), entitled "Joint Arthroplasty Devices and Surgical Tools," (ii) U.S. Patent No. 8,460,304 ("the '304 Patent," attached hereto as Exhibit B), entitled "Joint Arthroplasty Devices and Surgical Tools," (iii) U.S. Patent No. 9,186,161 ("the '161 Patent," attached hereto as Exhibit C), entitled "Surgical Tools for Arthroplasty," and (iv) U.S. Patent No. 9,295,482 ("the '482 Patent," attached hereto as Exhibit D), entitled "Patient Selectable Joint Arthroplasty Devices and Surgical Tools" (collectively, "the Patents-In-Suit").

## PARTIES

3.      Plaintiff Conformis, Inc. is a Delaware corporation with its worldwide headquarters at 600 Technology Park Drive, Billerica, Massachusetts 01821.

4.      Conformis is the assignee and owner of the Patents-In-Suit.

5.      Upon information and belief, Defendant Medacta International SA is organized and existing under the laws of Switzerland and has its principal place of business at Strada Regina, Castel Pietro, Switzerland.

6.      Upon information and belief, Defendant Medacta USA, Inc. is a Delaware corporation with its principal place of business at 6640 Carothers Parkway, Franklin, Tennessee 37067.  Medacta USA is a wholly owned subsidiary of Medacta International.

## JURISDICTION AND VENUE

7.      Conformis' patent infringement claims arise under the Patent Laws of the United States, Title 35, of the United States Code and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*.  Accordingly, this Court has subject matter jurisdiction over such claims pursuant to 28 U.S.C. §§ 1331 (federal question), 1338 (action arising under an Act of Congress relating to patents), 2201 (creation of remedy), and 2202 (further relief).

8.      This Court has personal jurisdiction over Medacta USA, at least because Medacta USA is at home in the State of Delaware, where it is incorporated and has a registered agent for service of process.  In addition, upon information and belief, Medacta USA regularly does or solicits business in the State of Delaware and has committed one or more acts of patent infringement complained of herein in the District of Delaware.

9.      This Court has personal jurisdiction over Medacta International, because, directly and through Medacta USA, it has committed acts in the District giving rise to this action for patent infringement and/or has established minimum contacts with Delaware such that the

exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Medacta International manufactures and sells the infringing MyKnee and MyShoulder patient-specific instruments and systems to Medacta USA. Thus, Medacta International has placed, and continues to place infringing products into the stream of commerce, via its established distribution channel through Medacta USA, with the knowledge, intent, and/or understanding that such products are sold in the State of Delaware and elsewhere in the United States. Medacta International also has induced and continues to induce infringement in the State of Delaware and elsewhere in the United States, including by providing surgical technique guides, bearing the Medacta International name, associated with the infringing products and made available to United States customers. Moreover, Medacta International has received and continues to receive revenue from U.S. sales.

10.     The Court has personal jurisdiction over Medacta International for the additional reason that it utilizes Medacta USA, its wholly owned subsidiary, as its agent for conducting business in the United States.

11.     On the Medacta International website, Medacta International publicly identifies Medacta USA's principal place of business in the United States as the location of its "representative." Medacta International's publicly available Annual Reports further describe their Executive Management, based in Medacta International's Swiss headquarters, as being "responsible for" regional Directors, who oversee and manage each of the Medacta's internationally based "branches." Medacta International also issues press releases on behalf of Medacta USA. For example, Medacta International's CEO announced the opening of Medacta USA's offices in a press release issued by Medacta International, describing them as "Medacta's US headquarters." On information and belief, Medacta International executive and/or

management teams also have responsibilities with respect to Medacta USA.  Medacta

International also appoints senior employees at Medacta USA, including the director of Medacta

USA's spine division.

12.     In addition, although Medacta International is responsible for the design and

development of the infringing products and submitted 510(k) premarketing submissions to the

U.S. Food and Drug Administration, it is Medacta USA's Senior Director of Quality and

Regulatory who is listed as the applicant's "correspondent."  Consistent with Medacta

International's use of Medacta USA as its agent, Medacta International's website explains that

"We received the first FDA product clearance and implanted the first prosthesis in the USA."

13.     Further, Medacta International is involved in the management of Medacta USA,

including approving operating budgeting, planning initiatives, acquisitions, significant capital

expenditures and major U.S. based litigation decisions like settlement or budgets.  On

information and belief, Medacta International also dictates to Medacta USA the amount of

revenue it receives from it.

14.     Venue in this Court is proper under the provisions of 28 U.S.C. §§ 1391(b) and

(c) and 28 U.S.C. § 1400.  Medacta USA is incorporated in Delaware and thus resides in this

State.  In addition, Medacta International is subject to suit in this Court pursuant to 28 U.S.C.

1391(c)(3).

## **FACTUAL BACKGROUND**

### A.     **Background**

15.     Conformis is the world's leading designer, developer, and manufacturer of

patient-specific instrument systems required to best fit implants into a specific patient's body.

Conformis also designs and manufactures patient-specific knee and hip replacement implant

systems.  Founded by doctors affiliated with Stanford and Harvard Medical Schools, Conformis

began with a revolutionary idea: make the implant and tools fit the patient rather than forcing the patient to fit the implant and tools.

16.     For decades before Conformis' innovation, surgeons have been implanting medical devices using (and many are still using) standard instrument systems that have not been designed with reference to the anatomy of individual patients.  As a result of this imprecise approach, after surgery, patients commonly suffer loss of movement and function, instability, and lingering pain.

17.     Conformis recognized that the conventional process of joint repair was backwards: rather than fitting the patient to the tools, the tools should be designed and developed specifically for the patient, as this produces a better-seated implant.

18.     Conformis therefore set out to develop patient-specific instrument systems, which precisely place an implant, reduce surgical time and trauma, and create a reproducible surgical technique.  Conformis' patient-specific instrument systems eliminate many of the traditional instruments associated with conventional surgery while concurrently simplifying and improving surgical technique.

**B.     Conformis' Patents**

19.     Conformis has made significant investments in the research, development, and testing of patient-specific instrument systems for knee and hip replacement surgery.

20.     To protect those investments, Conformis applied for and obtained a number of patents, including the Patents-In-Suit.

21.     Patent authorities worldwide have recognized that Conformis' patient-specific instrument systems are worthy of patent protection, and have granted Conformis over 200 patents on its technologies.  These patents, and Conformis' many additional pending patent

applications, span a range of related technologies including imaging software, image processing, patient-specific orthopedic implants, patient-specific orthopedic instrumentation, methods of design and manufacture of patient-specific systems, and related surgical techniques.  The technology and patent portfolio are applicable to all major joint systems, including knee, hip, shoulder, and ankle joints.

22.     The '129 Patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on February 19, 2013, to Wolfgang Fitz, Philipp Lang, Daniel Steines, Konstantinos Tsougarakis and Rene Vargas-Voracek, after fair and full examination, for "Joint Arthroplasty Devices and Surgical Tools."  The '129 Patent is assigned to Conformis.

23.     The '304 Patent was duly and legally issued by the USPTO on June 11, 2013, to Wolfgang Fitz, Philipp Lang, Daniel Steines, Konstantinos Tsougarakis and Rene Vargas-Voracek, after full and fair examination, for "Joint Arthroplasty Devices and Surgical Tools." The '304 Patent is assigned to Conformis.

24.     The '161 Patent was duly and legally issued by the USPTO on November 17, 2015, to Philipp Lang, Wolfgang Fitz, Ray Bojarski, Daniel Steines, Albert G. Burdulis, Jr., and Rene Vargas-Voracek, after fair and full examination, for "Surgical Tools for Arthroplasty." The '161 Patent is assigned to Conformis.

25.     The '482 Patent was duly and legally issued by the USPTO on March 29, 2016, to Wolfgang Fitz, Philipp Lang, Raymond A. Bojarski and Daniel Steines, after fair and full examination, for "Patient Selectable Joint Arthroplasty Devices and Surgical Tools."  The '482 Patent is assigned to Conformis.

26.     Conformis is the owner of all rights, title, and interest in and to the Patents-In-Suit.  Conformis possesses all rights to sue and recover for past and future infringement of the Patents-In-Suit.

C.      **Medacta's Infringing Activities**[1]

27.     Medacta offers the MyKnee® "patient-specific" instruments that are "based on CT or MRI images of the patient's knee" for knee replacement surgery, including at least MyKnee® Ligament Balancing System ("MyKnee® LBS") (*see* Ex. E at 4), MyKnee® Minimally Invasive Cutting Blocks ("MyKnee® MIS"), MyKnee® Pin Positioning System ("MyKnee® PPS") and MyKnee® Uni Cutting Block ("MyKnee® Uni") (collectively, "MyKnee®").

28.     MyKnee® is used with different Medacta implants, including Global Medacta Knee ("GMK") Primary, GMK Sphere and GMK Uni (collectively, "My Knee® Implants").

29.     Medacta also offers other products that are used with MyKnee®, including at least the following product lines: GMK Efficiency, Efficiency KneePack, and MyKnee MIKA instruments.

30.     Medacta also offers patient matched technology in the form of patient-specific instruments for shoulder surgery, including at least MyShoulder products.

31.     On information and belief, MyShoulder can be used with the Medacta Shoulder System.  The Medacta Shoulder System is comprised of various implant components of varying sizes.

32.     Medacta's instruments and products compete with Conformis' innovative patient-specific surgical products.

---

[1] Based on Medacta's representations, Conformis has removed allegations against Medacta's MyHip without prejudice.

33.     On information and belief, Medacta is infringing the Patents-In-Suit by making, using, providing, offering to sell, importing, and selling (directly or through intermediaries) at least MyKnee® and MyShoulder patient-specific instruments and implants, including the MyKnee® Implants and the Medacta Shoulder System, in this District and elsewhere in the United States.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,377,129

34.     Conformis repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

35.     On information and belief, Medacta USA is presently making, using, offering for sale, and/or selling a patient-specific system for knee surgery, including MyKnee® and MyKnee® Implants (together, the "MyKnee® System"), that directly infringes one or more claims of the '129 Patent, literally or under the doctrine of equivalents.

36.     On information and belief, Medacta International is presently making, using, offering for sale, and/or selling a patient-specific system for knee surgery, including MyKnee® System, that directly infringes one or more claims of the '129 Patent, literally or under the doctrine of equivalents. Medacta International's direct infringement has included, but is not limited to, selling its products directly to Medacta USA for further dissemination to United States customers.

37.     Medacta's system practices at least one claim of the '129 Patent.  For example, claim 1 recites:

A patient-specific instrument system for surgery of a diseased or damaged knee joint of a patient, the instrument system comprising:

a patient-specific surface for engaging at least a portion of a substantially uncut joint surface of the diseased or damaged knee joint of the patient,

the patient-specific surface including cartilage information derived from image data of the diseased or damaged knee joint of the patient; and

a guide for directing a surgical instrument,

> wherein the guide has a predetermined position relative to the patient-specific surface and a predetermined orientation relative to at least one of an anatomical axis and a biomechanical axis associated with said knee joint;

> wherein the guide defines a drilling path through at least a portion of the knee joint,

>> the drilling path having a position based on a predetermined internal rotation angle or external rotation angle of an orthopedic implant.

38.     Claim 1 of the '129 Patent recites "[a] patient-specific instrument system for surgery of a diseased or damaged knee joint of a patient," comprising "a patient-specific surface for engaging at least a portion of a substantially uncut joint surface of the" knee joint, which includes "cartilage information derived from image data" of the knee joint and also includes "a guide for directing a surgical instrument." Ex. A at Claim 1. Medacta's MyKnee® is a "patient-specific" instrument that is "based on . . . MRI images of the patient's knee" (Ex. E at 4) and is "designed for a single patient to assist in the positioning of total knee replacement components intraoperatively and in guiding the marking of bone before cutting." *Id.* Additionally, the MyKnee® is "fixed . . . using . . . cortical pins." *Id.* at 14. The images below are illustrative:



*Id.*

39.     Claim 1 of the '129 Patent also recites that "the guide has a predetermined position relative to the patient-specific surface and a predetermined orientation relative to . . . an anatomical axis [or] a biomechanical axis associated" with the knee joint and "defines a drilling path through at least a portion of the knee joint . . . based on a predetermined internal rotation angle or external rotation angle of an orthopedic implant."  Ex. A at Claim 1.  The MyKnee® technique guide instructs the operator to verify that the points of contact between the cutting block and the bone are "respected."  Ex. E at 12.  The image below is illustrative and the brochure states that the cutting block contact area is based on the CT and MRI imaging.  *Id.*



*Id.*.  The MyKnee® technique guide instructs that the particular "parameters regarding femoral and tibial implantation" are planned by the surgeon before the surgical procedure, some of which include "femoral rotation" and "angles."  *Id.* at 4.  During surgery, which includes MyKnee®

Implants, "[t]he surgeon can decide to fix the external rotation selected in the pre-operative

planning . . . by inserting a pin in the central hole."  *Id.* at 17.

40.     Medacta's infringing activities violate one or more subsections of 35 U.S.C. §

271.

41.     Medacta USA has also actively induced, and continues to actively induce, others

to infringe at least claim 1 of the '129 Patent in violation of 35 U.S.C. § 271(b) by causing,

instructing, urging, encouraging and/or aiding others to directly infringe at least claim 1 of the

'129 Patent by making, using, offering to sell, selling, and/or importing in and into the United

States the infringing MyKnee® System, as detailed above.  Medacta USA's active inducement

has included, for example and without limitation, marketing, selling, and offering to sell the

MyKnee® System, providing instructions on how to use the MyKnee® System, selling

instrumentation or devices for use with the MyKnee® System, and promoting the use of the

MyKnee® System.  For example, Medacta USA has encouraged customers including scientists,

researchers, and health care professionals to use the MyKnee® System by means of marketing

materials and videos.  Medacta USA also has instructed customers on how to use the MyKnee®

System by means of product manuals.

42.     Medacta International has also actively induced, and continues to actively induce,

others to infringe at least claim 1 of the '129 Patent in violation of 35 U.S.C. § 271(b) by

causing, instructing, urging, enabling, encouraging and/or aiding Medacta USA and/or surgeons

to directly infringe at least claim 1 of the '129 Patent by making, using, offering to sell, selling,

and/or importing in and into the United States the infringing MyKnee® System, as detailed

above. Medacta International's active inducement has included, for example and without

limitation, marketing, selling, and offering to sell the MyKnee® System, providing instructions

on how to use the MyKnee® System, selling instrumentation or devices for use with the MyKnee® System, and promoting the use of the MyKnee® System.  For example, Medacta International has encouraged customers including scientists, researchers, and health care professionals to use the MyKnee® System by means of marketing materials and videos.  Medacta International also has instructed customers on how to use the MyKnee® System by means of product manuals.  Medacta International's active inducement has further included furnishing infringing products with surgical guides and other promotional materials for the MyKnee® System to Medacta USA, and directing Medacta USA to sell those products.

43.     Medacta USA has also contributed, and continues to contribute, to its customers' direct infringement of the '129 Patent in violation of 35 U.S.C. § 271(c) by providing products that are used in the infringing systems and that are not suitable for any substantial non-infringing use.

44.     Medacta International has also contributed, and continues to contribute, to its customers' direct infringement of the '129 Patent in violation of 35 U.S.C. § 271(c) by providing products in the United States that are used in the infringing systems and that are not suitable for any substantial non-infringing use.

45.     Upon information and belief, at least as early as the filing of the original Complaint (or soon thereafter), both Medacta USA and Medacta International knew and/or were willfully blind to the fact that Medacta's actions have infringed  and have induced and contributed  to infringement of the '129 Patent with the knowledge and intent that one or more claims of the '129 Patent be infringed.

46.     Medacta USA and Medacta International have had notice of the '129 Patent at least as early as the filing of the original Complaint (or soon thereafter).  On information and

12

belief, Medacta USA and Medacta International's direct and indirect infringement of the '129 Patent have been willful.

47.     Conformis has suffered economic harm as a result of Medacta's infringing activities in an amount to be proven at trial, but in no case less than a reasonable royalty.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,460,304

48.     Conformis repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

49.     On information and belief, Medacta USA is presently making, using, offering for sale, and/or selling patient-specific systems for knee surgery, including MyKnee® System, and shoulder surgery, including MyShoulder products, that directly infringe one or more claims of the '304 Patent, literally or under the doctrine of equivalents.

50.     On information and belief, Medacta International is presently making, using, offering for sale, and/or selling patient-specific systems for knee surgery, including MyKnee® System, and shoulder surgery, including MyShoulder products, that directly infringe one or more claims of the '304 Patent, literally or under the doctrine of equivalents. Medacta International's direct infringement has included, but is not limited to, selling its products directly to Medacta USA for further dissemination to United States customers.

51.     Medacta's systems practice at least one claim of the '304 Patent.  For example, claim 1 recites:

> A surgical instrument for use in surgically repairing a joint of a patient, the surgical instrument comprising:
>
> > a mold having an internal surface that includes joint information derived from image data of the joint of the patient; and
> >
> > two or more guide holes, each configured to guide a surgical pin,

wherein at least one of the two or more guide holes has a position based on anatomical information of the joint of the patient to facilitate the placement of an articular repair system when the internal surface of the mold is aligned with the joint of the patient,

wherein the articular repair system has a predetermined rotation angle and

wherein the position is based on the predetermined rotation angle.

52.     Claim 1 of the '304 Patent requires that the "surgical instrument for use in surgically repairing a joint of a patient . . . ha[s] an internal surface that includes joint information derived from image data of the joint of the patient." Ex. B at Claim 1.  Medacta's MyKnee® is a "patient-specific" instrument that is "based on CT or MRI images of the patient's knee" (Ex. E at 4) and is "designed for a single patient to assist in the positioning of total knee replacement components intraoperatively and in guiding the marking of bone before cutting." *Id.*

53.     Claim 1 of the '304 Patent also recites that the claimed instrument has "two or more guide holes, each configured to guide a surgical pin." Ex. B at Claim 1.  Similarly, the MyKnee® is "fixed . . . using . . . cortical pins." Ex. E at 14.  The images below are illustrative:



*Id.*

54.     In addition, claim 1 of the '304 Patent requires that "at least one of the two or more guide holes has a position based on anatomical information of the joint of the patient to

14

facilitate the placement of an articular repair system when the internal surface of the mold is aligned with the joint of the patient." Ex. B at Claim 1. The MyKnee® technique guide instructs the operator to verify that the points of contact between the cutting block and the bone are "respected." Ex. E at 12. The image below is illustrative and the brochure states that the cutting block contact area is based on the CT and MRI imaging. *Id.*



*Id.*

     55.    Lastly, claim 1 of the '304 Patent recites that the "articular repair system has a predetermined rotation angle and . . . the position is based on the predetermined rotation angle." Ex. B at Claim 1. The MyKnee® technique guide instructs that the particular "parameters regarding femoral and tibial implantation" are planned by the surgeon before the surgical procedure, some of which include "femoral rotation" and "angles." Ex. E at 4. During surgery

including MyKnee® Implants, "[t]he surgeon can decide to fix the external rotation selected in the pre-operative planning . . . by inserting a pin in the central hole." *Id.* at 17.

56.     The MyShoulder instrument system as used with the Medacta Shoulder System infringes the '304 Patent in a similar manner.

57.     As stated above, claim 1 of the '304 patent recites "[a] surgical instrument for use in surgically repairing a joint of a patient." Ex. B at Claim 1. Medacta's MyShoulder instrument system is a surgical instrument for use in surgically repairing a joint of a patient. MyShoulder allows "a surgeon to realize the pre-operative 3D planning and deliver accurate implant placement using CT based 3D printed cutting and pin guides" (Ex. F at 1) and is used with the Medacta Shoulder System components. Ex. G at 1-2.

58.     Claim 1 of the '304 patent requires the surgical instrument to have "a mold having an internal surface that includes joint information derived from image data of the joint of the patient." Ex. B at Claim 1. MyShoulder relies on CT images of the patient's shoulder to prepare patient-specific guides and virtually position the implant before surgery. Ex. F at 1-2.

59.     Claim 1 of the '304 patent additionally requires that the surgical instrument have "two or more guides holes, each configured to guide a surgical pin." Ex. B at Claim 1. MyShoulder has two or more guide holes, each of which is configured to guide a surgical pin:



Medacta Shoulder System Reverse Live Surgery with Bio-RSA using MyShoulder - Prof. Dr. Med. B. Jost

*See* https://www.youtube.com/watch?v=qvT0Ml-KiNk.  Claim 1 of the '304 patent further requires that "at least one of the two or more guide holes has a position based on anatomical information of the joint of the patient to facilitate the placement of an articular repair system when the internal surface of the mold is aligned with the joint of the patient" and that the articular repair system has a predetermined rotation angle, on which the position is based.  Ex. B at Claim 1.  MyShoulder is used with the Medacta Shoulder System components.  Ex. G at 1-2.  Using the MyShoulder workflow, CT images of the patient's shoulder are taken to prepare a patient-specific guide, engage in preoperative planning and virtually position the implant.  Ex. F at 1-2.  Therefore, at least one of the two or more MyShoulder guide holes has a position based on anatomical information of the patient to facilitate the placement of the articular repair system when the mold is aligned with the patient's joint.

60.    Medacta's infringing activities violate one or more subsections of 35 U.S.C. § 271.

61.     Medacta USA has also actively induced, and continues to actively induce, others to infringe at least claim 1 of the '304 Patent in violation of 35 U.S.C. § 271(b) by causing, instructing, urging, encouraging and/or aiding others to directly infringe at least claim 1 of the '304 Patent by making, using, offering to sell, selling, and/or importing in and into the United States the infringing MyKnee® System and MyShoulder products, as detailed above.  Medacta USA's active inducement has included and/or will include, for example and without limitation, marketing, selling, and offering to sell the MyKnee® System and MyShoulder; providing instructions on how to use the MyKnee® System and MyShoulder; selling instrumentation or devices for use with the MyKnee® System and MyShoulder; and promoting the use of the MyKnee® System and MyShoulder.  For example, Medacta USA has encouraged and/or will encourage customers including scientists, researchers, and health care professionals to use the MyKnee® System and MyShoulder by means of marketing materials and videos.  Medacta also has instructed and/or will instruct customers on how to use the MyKnee® System and MyShoulder by means of product manuals.

62.     Medacta International has also actively induced, and continues to actively induce, others to infringe at least claim 1 of the '304 Patent in violation of 35 U.S.C. § 271(b) by causing, instructing, urging, enabling encouraging and/or aiding Medacta USA and/or surgeons to directly infringe at least claim 1 of the '304 Patent by making, using, offering to sell, selling, and/or importing in and into the United States the infringing MyKnee® System, as detailed above. Medacta International's active inducement has included, for example and without limitation, marketing, selling, and offering to sell the MyKnee® System, providing instructions on how to use the MyKnee® System, selling instrumentation or devices for use with the MyKnee® System, and promoting the use of the MyKnee® System.  For example, Medacta

International has encouraged customers including scientists, researchers, and health care professionals to use the MyKnee® System by means of marketing materials and videos. Medacta International also has instructed customers on how to use the MyKnee® System by means of product manuals. Medacta International's active inducement has further included furnishing infringing products with surgical guides and other promotional materials for the MyKnee® System to Medacta USA, and directing Medacta USA to sell those products.

63.    Medacta USA has also contributed, and continues to contribute, to its customers' direct infringement of the '304 Patent in violation of 35 U.S.C. § 271(c) by providing products that are used in the infringing systems and that are not suitable for any substantial non-infringing use.

64.    Medacta USA has also contributed, and continues to contribute, to its customers' direct infringement of the '304 Patent in violation of 35 U.S.C. § 271(c) by providing products that are used in the infringing systems and that are not suitable for any substantial non-infringing use.

65.    Upon information and belief, at least as early as the filing of the original Complaint (or soon thereafter), both Medacta USA and Medacta International knew and/or were willfully blind to the fact that Medacta's actions have infringed and have induced and contributed to infringement of the '304 Patent with the knowledge and intent that one or more claims of the '304 Patent be infringed.

66.    Medacta USA and Medacta International have had notice of the '304 Patent at least as early as the filing of the original Complaint (or soon thereafter). On information and belief, Medacta USA and Medacta International's direct and indirect infringement of the '304 Patent have been willful.

67.     Conformis has suffered economic harm as a result of Medacta's infringing activities in an amount to be proven at trial, but in no case less than a reasonable royalty.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,186,161**

68.     Conformis repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69.     On information and belief, Medacta USA is presently making, using, offering for sale, and/or selling patient-specific systems for knee surgery, including MyKnee® System, and shoulder surgery, including MyShoulder products, that directly infringe one or more claims of the '161 Patent, literally or under the doctrine of equivalents.

70.     On information and belief, Medacta International is presently making, using, offering for sale, and/or selling a patient-specific system for knee surgery, including MyKnee® System, that directly infringes one or more claims of the '161 Patent, literally or under the doctrine of equivalents.  Medacta International's direct infringement has included, but is not limited to, selling its products directly to Medacta USA for further dissemination to United States customers.

71.     Medacta's system practices at least one claim of the '161 Patent.  For example, claim 1 recites:

> A surgical system including an articular repair system and a surgical instrument for use in surgically repairing a joint of a patient, the surgical instrument comprising:
>
> > a mold having an internal surface that includes joint information derived from image data of the joint of the patient;
>
> > and two or more guide holes, each configured to guide a surgical pin,
>
> > > wherein at least one of the two or more guide holes has a position and/or orientation based on anatomical information of the joint of the patient to facilitate the placement of the articular repair system when the internal surface of the mold is aligned with the joint of the patient,

wherein the articular repair system has a predetermined rotation angle and wherein the position and/or orientation is based on the predetermined rotation angle.

72.     Claim 1 of the '161 Patent recites a "surgical system including an articular repair system and a surgical instrument for use in surgically repairing a joint of a patient" that comprises "a mold having an internal surface that includes joint information derived from image data of the joint of the patient."  Ex. C at Claim 1.  Medacta's MyKnee® is "designed for a single patient to assist in the positioning of total knee replacement components intraoperatively and in guiding the marking of bone before cutting."  Ex. E at 4.  Prior to the surgical procedure, "CT or MRI imaging is used to create a tri-dimensional bone model of the patient's knee anatomy.  This bone replica is the model used to create the anatomical cutting blocks that can fit a patient's knee morphology . . . ."  *Id.*

73.     Claim 1 of the '161 Patent also requires the claimed invention to have "two or more guide holes, each configured to guide a surgical pin."  Ex. C at Claim 1.  The MyKnee® technique guide instructs that in order to fix the MyKnee® on the femur and to "avoid [anterior/posterior] movement," it "must . . . be fixed on the femoral distal condyles using . . . cortical pins."  Ex. E at 14.  The images below are illustrative:



*Id.*

74.     Claim 1 of the '161 Patent further recites that the "guide holes ha[ve] a position and/or orientation based on anatomical information of the joint of the patient to facilitate the placement of the articular repair system when the internal surface of the mold is aligned with the joint of the patient."  Ex. C at Claim 1.  The MyKnee® technique guide instructs the operator to verify that the points of contact between the instrument and the bone are "respected."  Ex. E at 12.  The image below is illustrative and the MyKnee® brochure states that the cutting block contact area is based on the CT and MRI imaging data.  *Id.*



*Id.*  The MyKnee® technique guide instructs that the particular "parameters regarding femoral and tibial implantation" are planned by the surgeon before the surgical procedure, some of which include "femoral rotation" and "angles."  *Id.* at 4.

75.     Lastly, claim 1 of the '161 Patent requires that the "articular repair system" have "a predetermined rotation angle . . . wherein the position and/or orientation is based on the

predetermined rotation angle." Ex. C at Claim 1.  Moreover, for the MyKnee® including

MyKnee® Implants, the particular "parameters regarding femoral and tibial implantation" are

planned by the surgeon prior to the surgical procedure, and include "femoral rotation" and

"angles." Ex. E at 4.  During surgery, "[t]he surgeon can decide to fix the external rotation

selected in the pre-operative planning . . . by inserting a pin in the central hole." *Id.* at 17.

76.     MyShoulder as used with the Medacta Shoulder System infringes the '161 Patent

in a similar manner.

77.     As stated above, claim 1 of the '161 patent recites "[a] surgical system including

an articular repair system and a surgical instrument for use in surgically repairing a joint of a

patient." Ex. C at Claim 1.  Medacta's MyShoulder as used with Medacta Shoulder System is a

surgical system including an articular repair system and a surgical instrument for use in

surgically repairing a joint of a patient.  MyShoulder allows "a surgeon to realize the pre-

operative 3D planning and deliver accurate implant placement using CT based 3D printed cutting

and pin guides" (Ex. F at 1) and is used with the Medacta Shoulder System components.  Ex. G

at 1-2.

78.     Claim 1 of the '161 patent requires the surgical instrument to have "a mold having

an internal surface that includes joint information derived from image data of the joint of the

patient." Ex. C at Claim 1.  MyShoulder relies on CT images of the patient's shoulder to prepare

patient-specific guides and virtually position the implant before surgery.  Ex. F at 1-2.

79.     Claim 1 of the '161 patent additionally requires that the surgical instrument have

"two or more guides holes, each configured to guide a surgical pin." Ex. C at Claim 1.

MyShoulder has two or more guide holes, and on information and belief, each guide hole is

configured to guide a surgical pin:



Medacta Shoulder System Reverse Live Surgery with Bio-RSA using MyShoulder - Prof. Dr. Med. B. Jost

*See* https://www.youtube.com/watch?v=qvT0Ml-KiNk.  Claim 1 of the '161 patent further requires that "at least one of the two or more guide holes has a position and/or orientation based on anatomical information of the joint of the patient to facilitate the placement of the articular repair system when the internal surface of the mold is aligned with the joint of the patient" and that the articular repair system has a predetermined rotation angle, on which the position is based.  Ex. C at Claim 1.  MyShoulder is used with the Medacta Shoulder System components.  Ex. G at 1-2.  Using the MyShoulder workflow, CT images of the patient's shoulder are taken to prepare a patient-specific guide, engage in preoperative planning and virtually position the implant.  Ex. F at 1-2.  Therefore, at least one of the two or more MyShoulder guide holes has a position based on anatomical information of the patient to facilitate the placement of the articular repair system when the mold is aligned with the patient's joint.

80.     Medacta's infringing activities violate one or more subsections of 35 U.S.C. § 271.

81.     Medacta USA has also actively induced, and continues to actively induce, others to infringe at least claim 1 of the '161 Patent in violation of 35 U.S.C. § 271(b) by causing, instructing, urging, encouraging and/or aiding others to directly infringe at least claim 1 of the '161 Patent by making, using, offering to sell, selling, and/or importing in and into the United States the infringing MyKnee® System and MyShoulder, as detailed above.  Medacta USA's active inducement has included and/or will include, for example and without limitation, marketing, selling, and offering to sell the MyKnee® System and MyShoulder; providing instructions on how to use the MyKnee® System and MyShoulder; selling instrumentation or devices for use with the MyKnee® System and MyShoulder; and promoting the use of the MyKnee® System and MyShoulder.  For example, Medacta USA has encouraged and/or will encourage, and continues to encourage, customers including scientists, researchers, and health care professionals to use the MyKnee® System and MyShoulder by means of marketing materials and videos.  Medacta USA also has instructed and/or will instruct customers on how to use the MyKnee® System and MyShoulder by means of product manuals.

82.     Medacta International has also actively induced, and continues to actively induce, others to infringe at least claim 1 of the '161 Patent in violation of 35 U.S.C. § 271(b) by causing, instructing, urging, enabling, encouraging and/or aiding Medacta USA and/or surgeons to directly infringe at least claim 1 of the '161 Patent by making, using, offering to sell, selling, and/or importing in and into the United States the infringing MyKnee® System, as detailed above. Medacta International's active inducement has included, for example and without limitation, marketing, selling, and offering to sell the MyKnee® System, providing instructions on how to use the MyKnee® System, selling instrumentation or devices for use with the MyKnee® System, and promoting the use of the MyKnee® System.  For example, Medacta

International has encouraged customers including scientists, researchers, and health care professionals to use the MyKnee® System by means of marketing materials and videos.  Medacta International also has instructed customers on how to use the MyKnee® System by means of product manuals.  Medacta International's active inducement has further included furnishing infringing products with surgical guides and other promotional materials for the MyKnee® System to Medacta USA, and directing Medacta USA to sell those products.

83.     Medacta USA has also contributed, and continues to contribute, to its customers' direct infringement of the '161 Patent in violation of 35 U.S.C. § 271(c) by providing products that are used in the infringing systems and that are not suitable for any substantial non-infringing use.

84.     Medacta International has also contributed, and continues to contribute, to its customers' direct infringement of the '161 Patent in violation of 35 U.S.C. § 271(c) by providing products that are used in the infringing systems and that are not suitable for any substantial non-infringing use.

85.     Upon information and belief, at least as early as the filing of the original Complaint (or soon thereafter), both Medacta USA and Medacta Internationl knew and/or were willfully blind to the fact that Medacta's actions have infringed and have induced and contributed to infringement of the '161 Patent with the knowledge and intent that one or more claims of the '161 Patent be infringed.

86.     Medacta USA and Medacta International have had notice of the '161 Patent at least as early as the filing of the original Complaint (or soon thereafter).  On information and belief, Medacta USA and Medacta International's direct and indirect infringement of the '161 Patent have been willful.

87.     Conformis has suffered economic harm as a result of Medacta's infringing activities in an amount to be proven at trial, but in no case less than a reasonable royalty.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,295,482**

88.     Conformis repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

89.     On information and belief, Medacta is presently making, using, offering for sale, and/or selling a patient-specific system for knee surgery, including MyKnee® System, that directly infringes one or more claims of the '482 Patent, literally or under the doctrine of equivalents.

90.     On information and belief, Medacta International is presently making, using, offering for sale, and/or selling a patient-specific system for knee surgery, including MyKnee® System, that directly infringes one or more claims of the '482 Patent, literally or under the doctrine of equivalents. Medacta International's direct infringement has included, but is not limited to, selling its products directly to Medacta USA for further dissemination to United States customers.

91.     Medacta's system practices at least one claim of the '482 Patent.  For example, claim 13 recites:

> A joint arthroplasty system for use in surgically repairing a diseased or damaged joint of a patient, comprising:
>
> an implant; and
>
>> a block having a patient-specific surface and a guide:
>>
>> the patient-specific surface having a first portion configured to have a shape that is substantially a negative of a subchondral bone surface of the diseased or damaged joint and a second portion configured to have a shape that is substantially a negative of a cortical bone surface of the diseased or damaged joint,

wherein the patient-specific surface is configured to reference an osteophyte of the diseased or damaged joint; and

the guide being sized and shaped to accommodate a surgical tool and have a position and orientation relative to the patient-specific surface to provide a predetermined path for the surgical tool that is aligned through a portion of the diseased or damaged joint.

92.     Claim 13 of the '482 Patent recites a "joint arthroplasty system for use in surgically repairing a diseased or damaged joint of a patient," which comprises an "implant," a "patient-specific . . . block" and "a guide."  Ex. D at Claim 13.  Medacta's MyKnee® is a "patient-specific cutting block which allows the surgeon to realise his pre-operative 3D planning, based on CT or MRI images of the patient's knee."  Ex. E at 4.  The system is "designed for a single patient to assist in the positioning of total knee replacement components intraoperatively and in guiding the marking of bone before cutting."  *Id.*  Prior to the surgical procedure, "CT or MRI imaging is used to create a tri-dimensional bone model of the patient's knee anatomy.  This bone replica is the model used to create the anatomical cutting blocks that can fit a patient's knee morphology . . . ."  *Id.*  Prior to the surgical procedure, the surgeon is involved in "preoperative planning . . . to assess the surgical parameters regarding femoral and tibial implantation. . . . [These] [p]arameters . . . include: [f]emoral implant size [and] [t]ibial implant size."  *Id.*  The technique guide instructs the operator to verify that the points of contact between the instrument and the bone are "respected."  *Id.* at 12.  The image below is illustrative and the brochure states that the cutting block contact area is based on the CT and MRI imaging.  *Id.*

To ensure the maximum stability, verify that the points of contact between the MyKnee distal cutting block and the femur are respected. If bone models are available ensure that the contact points between MyKnee block and bone are in the position of the areas marked on the bone model. CT based and MRI based cutting blocks use different contact areas.



14.

○ MyKnee LBS distal cutting block contact area on the distal condyles

*Id.*  In order to fix the MyKnee® on the femur and to "avoid [anterior/posterior] movement," it "must also be fixed on the femoral distal condyles using . . . cortical pins."  *Id.* at 14.  The images below are illustrative:



*Id.*

93.     Additionally, claim 13 of the '482 Patent requires the "patient-specific surface . . . to reference an osteophyte of the diseased or damaged joint."  Ex. D at Claim 13.   MyKnee®

warns the surgeon not to "remove any osteophytes from the tibia or from the femur, in order not to alter the bony references of the MyKnee anatomical cutting blocks." *Id.* at 8, 11.

94.     Claim 13 of the '482 Patent additionally recites that the claimed instrument contacts "subchondral bone surface of the diseased or damaged joint" and "cortical bone surface of the diseased or damaged joint." Ex. D at Claim 13. On information and belief, the MyKnee® contacts both cortical bone and subchondral bone because the surgeon is instructed to "remove . . . cartilage . . . covering the cutting block contact areas." Ex. E at 12. On information and belief, the following image is illustrative of the contact MyKnee® makes with subchondral and cortical bone:



*Id.* at 18.

95.     Additionally, claim 13 of the '482 Patent requires the "guide" to be "sized and shaped to accommodate a surgical tool and have a position and orientation relative to the patient-specific surface to provide a predetermined path for the surgical tool that is aligned through a portion of the diseased or damaged joint." Ex. D at Claim 13. The MyKnee® guide instructs that "[o]nce the cutting guide has been properly arranged . . ., cut parameters are automatically set for the knee undergoing surgery according to the pre-operative planning. . . ." Ex. E at 13.

96.     Medacta's infringing activities violate one or more subsections of 35 U.S.C. § 271.

97.     Medacta has also actively induced, and continues to actively induce, others to infringe at least claim 13 of the '482 Patent in violation of 35 U.S.C. § 271(b) by causing, instructing, urging, encouraging and/or aiding others to directly infringe at least claim 13 of the '482 Patent by making, using, offering to sell, selling, and/or importing in and into the United States the infringing MyKnee® System, as detailed above.  Medacta's active inducement has included, for example and without limitation, marketing, selling, and offering to sell the MyKnee® System, providing instructions on how to use the MyKnee® System, selling instrumentation or devices for use with the MyKnee® System, and promoting the use of the MyKnee® System.  For example, Medacta has encouraged customers including scientists, researchers, and health care professionals to use the MyKnee® System by means of marketing materials and videos.  Medacta also has instructed customers on how to use the MyKnee® System by means of product manuals.

98.     Medacta International has also actively induced, and continues to actively induce, others to infringe at least claim 1 of the '482 Patent in violation of 35 U.S.C. § 271(b) by causing, instructing, urging, enabling, encouraging and/or aiding Medacta USA and/or surgeons to directly infringe at least claim 1 of the '482 Patent by making, using, offering to sell, selling, and/or importing in and into the United States the infringing MyKnee® System, as detailed above. Medacta International's active inducement has included, for example and without limitation, marketing, selling, and offering to sell the MyKnee® System, providing instructions on how to use the MyKnee® System, selling instrumentation or devices for use with the MyKnee® System, and promoting the use of the MyKnee® System.  For example, Medacta

International has encouraged customers including scientists, researchers, and health care professionals to use the MyKnee® System by means of marketing materials and videos.  Medacta International also has instructed customers on how to use the MyKnee® System by means of product manuals.  Medacta International's active inducement has further included furnishing infringing products with surgical guides and other promotional materials for the MyKnee® System to Medacta USA, and directing Medacta USA to sell those products.

99.     Medacta USA has also contributed, and continues to contribute, to its customers' direct infringement of the '482 Patent in violation of 35 U.S.C. § 271(c) by providing products that are used in the infringing systems and that are not suitable for any substantial non-infringing use.

100.    Medacta International has also contributed, and continues to contribute, to its customers' direct infringement of the '482 Patent in violation of 35 U.S.C. § 271(c) by providing products that are used in the infringing systems and that are not suitable for any substantial non-infringing use.

101.    Upon information and belief, at least as early as the filing of the original Complaint (or soon thereafter), both Medacta USA and Medacta International knew and/or were willfully blind to the fact that Medacta's actions have infringed and have induced and contributed to infringement of the '482 Patent with the knowledge and intent that one or more claims of the '482 Patent be infringed.

102.    Medacta USA and Medacta International have had notice of the '482 Patent at least as early as the filing of the original Complaint (or soon thereafter).  On information and belief, Medacta USA and Medacta International's direct and indirect infringement of the '482 Patent have been willful.

103.     Conformis has suffered economic harm as a result of Medacta's infringing activities in an amount to be proven at trial, but in no case less than a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Conformis respectfully requests the following relief:

A.     The entry of a judgment in favor of Conformis, and against Medacta USA, that Medacta USA has infringed and is continuing to infringe one or more claims of the '129 Patent, the '304 Patent, the '161 Patent and/or the '482 Patent and declaring that Medacta USA's importing, making, using, offering to sell, and/or selling at least MyShoulder products in the United States are and would be acts of infringement of one or more claims of the'304 Patent and/or the '161 Patent;

B.     The entry of a judgment in favor of Conformis, and against Medacta International, that Medacta International has infringed and is continuing to infringe one or more claims of the '129 Patent, the '304 Patent, the '161 Patent and/or the '482 Patent and declaring that Medacta International's importing, making, using, offering to sell, and/or selling at least MyShoulder products in the United States are and would be acts of infringement of one or more claims of the'304 Patent and/or the '161 Patent;

C.     The entry of a judgment in favor of Conformis, and against Medacta USA, that Medacta USA  has willfully infringed one or more claims of the '129 Patent, the'304 Patent, the '161 Patent and/or the '482 Patent;

D.     The entry of a judgment in favor of Conformis, and against Medacta International, that Medacta International has willfully infringed one or more claims of the '129 Patent, the'304 Patent, the '161 Patent and/or the '482 Patent;

E.      The entry of a judgment awarding Conformis all damages resulting from

Defendants' infringement, including Conformis' lost profits and no less than a reasonable

royalty, and that such amount be trebled based on Defendants' willful infringement;

F.      The entry of a judgment declaring that this is an exceptional case and awarding

Conformis its attorneys' fees in this matter pursuant to 35 U.S.C. § 285;

G.      The entry of a judgment in favor of Conformis, and against Defendants', that

interest, costs, and expenses be awarded in favor of Conformis; and

H.      That this Court order such other relief as the Court may deem just and proper,

including injunctive relief.

## JURY DEMAND

Conformis hereby demands trial by jury in this action on all issues so triable.


Dated:  September 23, 2020

**OF COUNSEL:**

Matthew M. Wolf
Paul Margulies
Michael Gershoni
Victoria L. Reines
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 942-5000
Matthew.Wolf@arnoldporter.com
Paul.Margulies@arnoldporter.com
Michael.Gershoni@arnoldporter.com
Victoria.Reines@arnoldporter.com

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600

*Attorneys for Conformis, Inc.*